IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RICHARD CASTAVIOUS DAUGHTRY,** : | |
| Plaintiff, : | |
| VS. : | NO. 5:22-CV-00059-TES-CHW |
| **LIEUTENANT PROSSER**, *et al.*, : | |
| Defendants. : | |

### ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Richard Castavious Daughtry, an inmate most recently confined in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, has provided the Court with additional information concerning his efforts to obtain a certified copy of his prison trust fund account records. As discussed in more detail below, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and his motion for assistance in obtaining his prison trust fund account information (ECF No. 11) is **DENIED as moot.** Plaintiff's claims that Defendant Prosser used excessive force when he attacked Plaintiff in the sallyport shall proceed for further factual development, but it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Although Plaintiff has not provided the Court

with a certified copy of his prison trust fund account information, as previously ordered, his submissions indicate that this failure cannot be attributed to his own actions. Because it appears from the information Plaintiff was able to submit that he is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and his motion for assistance to obtain his prison trust fund account information (ECF No. 11) is **DENIED as moot.**

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.     **Directions to Plaintiff's Custodian**

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff

is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.     Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW

### I. Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a

4

complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations

Plaintiff's claims arise from his confinement at the Baldwin State Prison ("BSP"). Compl. 5, ECF No. 1. On March 13, 2020, Plaintiff alleges he was lying on the floor in handcuffs and shackles after getting into an altercation with another inmate. *Id.* Plaintiff states that Defendant Prosser, a lieutenant at the jail, "took it upon himself to stand on [Plaintiff's] face with all his weight pressing down on [Plaintiff's] jaw." *Id.* Plaintiff contends that Defendant Prosser then moved Plaintiff into the sallyport where he assaulted Plaintiff, punching him repeatedly. *Id.* Plaintiff states that injuries from a punch to his left eye required him to be transported to the hospital and left him with permanent damage to

his vision. *Id.* at 6; Attach. 1 to Compl. 1, ECF No. 1-1. Plaintiff also contends that Defendant Martin, the prison's deputy warden of security, did not discipline or otherwise take any action to address Defendant Prosser's conduct. Attach. 1 to Compl. 1-2, ECF No. 1-1. Plaintiff also contends that Defendant Easley, the unit manager, "did nothing as he was present during the time that LT Prosser stood on [Plaintiff's] face." *Id.* at 2.

In another incident that occurred on December 20, 2020, Plaintiff contends that he was having "mental health issues" that resulted in him "standing on the toilet with three ropes tied around [his] neck seeking mental health treatment." Attach. 1 to Compl. 2, ECF No. 1-1. Plaintiff contends that Defendant Foster, a lieutenant, sprayed Plaintiff with a chemical agent while Plaintiff was in this precarious position, "which could have caused [Plaintiff] to slip and hang [himself]." *Id.* at 2-3. Plaintiff contends that Defendant Foster then opened Plaintiff's cell door and "began to grab [Plaintiff] with much force causing the ropes to tighten up much tighter as he pulled [Plaintiff] with ropes still tied around [Plaintiff's] neck." *Id.* at 3. Plaintiff contends that Defendant Foster's actions constituted excessive force and that Defendant Martin failed to take any action to correct it. *Id.* at 3-4. As a result of these alleged constitutional violations, Plaintiff seeks punitive and compensatory damages. Compl. 6, ECF No. 1.

### III. Plaintiff's Claims

#### A. Excessive Force Claims against Defendants Prosser and Easley

The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "'unnecessary and wanton infliction of pain.'" *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (per curiam) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th

6

Cir. 2010)). "In the prison context, an excessive force claim 'requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind.'" *Id.* (quoting *Thomas*, 614 F.3d at 1304). The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'" *Moore*, 847 F. App'x at 697 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam)). To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm." *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). To determine whether force was applied maliciously or sadistically, the court considers factors which include "(1) the need to apply force, (2) the relationship between that need and the amount of force applied, (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of the forceful response." *Moore*, 847 F. App'x at 698. When prison officials maliciously and sadistically use force to cause harm, they will always violate contemporary standards of decency, even if no significant injury results. *Id.*

In this case, Plaintiff has alleged that Defendant Prosser "stood on [Plaintiff's] face," using "all his weight" and "pressing down on [Plaintiff's] jaw" while Plaintiff was "fully restrained and lying on the ground." Attach. 1 to Compl. 2, ECF No. 1-1. Plaintiff, however, does not allege facts sufficient to show that the amount of force used was more than de minimis or that Defendant Prosser applied this force maliciously and sadistically

7

for the purpose of causing harm. Plaintiff acknowledges that immediately preceding this application of force, he had been placed in restraints due to being involved in an "incident" with another inmate, and he does not allege that he was fully compliant at this time. Compl. 5, ECF No. 1. The fact that Plaintiff had just been involved in an altercation with another inmate suggests that Defendant Prosser initially applied force in a good-faith effort to restore order rather than maliciously and sadistically to cause harm. *See, e.g., Skrtich*, 280 F.3d at 1300 (noting that "force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline" (internal quotation marks omitted)); *see also Pierre v. Padgett*, 808 F. App'x 838, 845 (11th Cir. 2020) (per curiam) (application of pepper spray to inmate who was restrained by other officers but was still attempting to "actively resist" did not constitute excessive force). Plaintiff also does not allege that he suffered any injury resulting from this continued restraint or any other facts indicating that this use of force was anything more than de minimis. *See, e.g., Ash v. Landrum*, 819 F. App'x 770, 772 (11th Cir. 2020) (per curiam) (holding that "a plaintiff complaining a push or a shove almost certainly fails to state a valid excessive force claim where no discernible injury occurs"); *Burke v. Bowns*, 653 F. App'x 683, 697 (11th Cir. 2019) (per curiam) (holding that officer used only de minimis force when he "'slammed'" prisoner "'face-first' to the ground while [prisoner] was 'fully restrained'" and used an "'arm bar' hold" to continue to restrain prisoner by "pin[ning]" prisoner "to the ground"); *Smith v. Sec'y, Dep't of Corrs.*, 524 F. App'x 511, 512-13 (11th Cir. 2013) (per curiam) (holding that prison official used only de minimis force against handcuffed inmate "in an 'unprovoked attack'" by twisting inmate's arms and pressing inmate against the wall "for

some minutes"). Plaintiff has therefore failed to plead specific facts sufficient to state an actionable Eighth Amendment claim, at least with respect to this initial restraint. And because Plaintiff has failed to state an actionable Eighth Amendment claim with respect to Defendant Prosser's conduct, Plaintiff likewise cannot state an Eighth Amendment claim based on Defendant Easley's failure to intervene in this continued restraint. *Cf. Skrtich*, 280 F.3d at 1301 (holding that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance"). These claims should therefore be dismissed without prejudice.

Although Plaintiff's allegations do not indicate that his initial contact was anything more than a de minimis application of force, Plaintiff also alleges that Defendant Prosser took Plaintiff into the sallyport and struck Plaintiff repeatedly and punched Plaintiff in his left eye for no apparent reason. The consequent injury to Plaintiff's eye required treatment at a hospital and resulted in a 30 percent loss in Plaintiff's vision. *Id.*; *see also* Compl. 5, ECF No. 1. These allegations do state an Eighth Amendment claim for purposes of preliminary screening, and this claim shall therefore proceed for further factual development.[1]

### B. Excessive Force Claims against Defendant Foster

Plaintiff also alleges that Defendant Foster used excessive force against him when he sprayed him with a chemical agent and then dragged Plaintiff out of his cell by the ropes

---

[1] Plaintiff has not alleged that Defendant Easley or any other individual was present when Defendant Prosser allegedly assaulted Plaintiff in the sallyport.

Plaintiff had tied around his neck. Plaintiff has not pleaded facts sufficient to show that Defendant Foster used force on Plaintiff maliciously or sadistically to cause harm. Instead, Defendant Foster was faced with an emergency situation—an inmate threatening suicide—that could certainly warrant the use of some force. In a factually similar case the Eleventh Circuit has held that the application of chemical agents to prevent an inmate's attempted suicide is a de minimis application of force rather than a malicious or sadistic effort to cause harm. *Moore*, 847 F. App'x at 698 (affirming summary judgment for prison official who sprayed chemical agent on prisoner who was attempting to cut his wrists). As in *Moore,* the facts as alleged by Plaintiff "do not demonstrate that [Foster] acted maliciously or sadistically—rather, they support a reasonable inference that [Foster] sprayed the chemicals in order to prevent [Plaintiff] from further injuring himself." *Id*. Although spraying Plaintiff and dragging him out of his cell may not have been the most "restrained response" available to Defendant Foster, *see id.*, Plaintiff has not alleged any facts suggesting that he was injured by this action or that Defendant Foster maliciously and sadistically intended to cause Plaintiff harm. Plaintiff's excessive force claims against Defendant Foster should therefore be dismissed without prejudice.

### C. Excessive Force Claims against Defendant Martin

Plaintiff also names Defendant Martin as a Defendant in this action. Plaintiff does not allege that Defendant Martin personally participated in any alleged use of excessive force; rather, it appears that Plaintiff is attempting to hold Defendant Martin liable in his supervisory capacity as the deputy warden of security. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts

of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In the absence of an allegation that a supervisor personally participated in unconstitutional conduct, a prisoner must establish some other causal connection between the supervisor's actions and the alleged constitutional injury to hold the supervisor liable under § 1983. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). This causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

In this case, Plaintiff has not alleged that Defendant Martin knew of a history of widespread abuse, that he had an improper custom or policy that led to the alleged constitutional deprivation, or that he directed his officers to act unlawfully or knew they would do so and failed to stop them. As such, Plaintiff has failed to allege a basis for holding Defendant Martin liable for the actions of his subordinates in this case. Plaintiff's claims against Defendant Martin should therefore be dismissed without prejudice.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and Plaintiff's claims that Defendant Prosser used excessive force when

he attacked Plaintiff in the sallyport shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice.** Plaintiff's motion for assistance in obtaining his prison trust fund account information (ECF No. 11) is **DENIED as moot.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Prosser, it is accordingly **ORDERED** that service be made on that Defendant and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what

address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 27th day of June, 2022.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge